# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
### CASE# 15-cv-61896-WJZ

IN RE THE APPLICATION OF:


Przemuslaw Michael Lotocki

      Plaintiff/Petitioner,

vs.


Yurislay Silva Molina

      Defendant/Respondent,

_____,

## AMENDED VERIFIED COMPLAINT AND .
## PETITION FOR RETURN OF THE CHILD

    Plaintiff and Petitioner Przemus Law/ Michael Lotocki respectfully shows this Court as follows:

## I. INTRODUCTION

1.      This action is brought by Przemuslaw Michael Lotocki ("Mr. Lotocki" or "Petitioner"), a citizen of Poland and resident of Spain, to secure the return of his four-year old son, C.S.L ("Child"), who was, without the Petitioner's consent or acquiescence, wrongfully removed from Spain and brought to the Southern District of Florida by the Child's mother, Defendant/ Respondent, Yurislay Silva Molina ("Ms. Molina" or "Respondent").

2.      This Petition is filed pursuant to the Convention on the Civil aspects of International Child Abduction (the "Hague Convention or the "Convention")[1] and

---

[1] Oct. 25, 1980, T.I.A.S. No. 11670 at 1, 22514 U.N.T.S. at 99, *reprinted in* 51 Fed. Reg. 104 (1986).

the International Child abduction Remedies Act ("ICARA").[2] A copy of the Hague Convention is attached hereto as Exhibit A. The Hague Convention came into effect in the United States of American on July 1, 1988, and has been ratified between, among other Contracting States, the United States of America and Spain.

3.　　　The objects of the Hague Convention are:

Article 1 (a): To secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

Article 2 (b): To ensure the rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. (*Id.*)

4.　The Hague Convention authorizes a federal district court to determine the merits of a claim for the wrongful removal or retention of a child; it does not, however, permit the district court to consider the merits of any underlying custody dispute.

## II. JURISDICTION AND VENUE

5.　　　This Court has jurisdiction over this case pursuant to 42 U.S.C. § 11603 (a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal questions jurisdiction). Venue is proper pursuant to 43 U.S.C. § 11603 and 28 U.S.C. § 1391 (b) because, upon information and belief, the Child and Respondent are residing in the Southern District of Florida at the Respondent's last known address 3791 N.W. 110th Avenue, Coral Springs, Broward County, Florida 33065.

---

[2] 42 U.S.C. §§ 11601-11610 (2011)

### III STATEMENT OF FACTS

6.      As noted above, Petitioner and Respondent are the parents of the Child. Petitioner and Respondent were married on January 21, 2011 in Villa Joyosa, Alicante, Spain (see marriage certificate attached hereto as Exhibit B) prior to the Respondent's wrongful removal of the Child on May 22, 2012.

7.      On January 22, 2011, the Respondent gave birth to the Child in Villa Joyosa, Alicante, Spain. A copy of the Child's birth certificate is attached hereto as Exhibit C.

8.      Until the date of separation between Mr. Lotocki and Ms. Molina, as detailed below, Mr. Lotocki and Ms. Molina and the Child lived together at their familial residence in Alcante, Spain. In total, Mr. Lotocki and Mr. Molina lived together in Spain for sixteen months.

9.      On May 22, 2011 Ms. Molina took the Child to Toronto Canada ostensibly for the purpose of visiting friends in Canada for twelve days. Two weeks later Ms. Molina called Mr. Lotocki from Miami, Florida telling her husband that she would be staying with relatives and that in a short time she would ask her husband to join her and the Child. Ultimately Ms. Molina informed Mr. Lotocki that she had fallen in love with another individual in Miami and that Mr. Lotocki should make a new life for himself in Spain and give up any claim he had to his son C.S.L.

10.      On March 27, 2014 Mr. Lotocki sought provisional measures from a Spanish Court in Madrid, Spain due to the separation (see letter from Mr. Lotocki and documents from the Court in Spain attached hereto as composite Exhibit D).

The Ministry of Justice Central Authority, Carmen Garcia Revuelta, Legal Adviser, issued a report (opinion) that Ms. Molina's actions violated article 154 of the Spanish Civil Code after Mr. Lotocki reported the pertinent facts to the Spanish authorities in Valencia, Spain on March 28, 2014 and that Ms. Molina's actions violated Mr. Lotocki's custody rights; that the retention is unlawful pursuant to Articles 3 and 6 of the Hague Convention as Mr. Lotocki has never authorized Ms. Molina to establish the Child's residence in the United States.

11.     The Respondent abducted the Child without the permission of the Petitioner.

12.     Upon information and belief, the Child is currently being kept in the company of the Respondent and her boyfriend in the Southern District of Florida.

13.     On May 5, 2014, the Petitioner's Request for Return for the Child was submitted to the United States Department of State through the Spanish Central Authority. A copy of the Petitioner's Request for Return and a translation thereof are attached hereto as Exhibit D.

## IV. WRONGFUL REMOVAL AND RETENTION OF CHILD BY RESPONDENT: CLAIM FOR RELIEF UNDER THE HAGUE CONVENTION

14.     As set forth above, on or about May 22, 2012 the Respondent wrongfully removed the Child within the meaning of Article 3 of the Convention and continued to wrongfully retain the Child in the state of Florida, United States, in violation of Article 3 and despite the Petitioner's efforts to have the Child returned to Spain.

15.     Petitioner has never acquiesced or consented to the removal of the Child from Spain to the United State or to their living outside of Spain.

16.     Respondent's removal and retention of the Child is wrongful within the meaning of the articles of the Convention because:

    a.     It is in violation of Petitioner's rights of custody as established by the Spanish law. A copy of the relevant Article 160 of the Spanish Penal Code is attached hereto respectfully as Exhibit E. Specifically, Respondent's removal and retention of the child is in violation of the Petitioner's rights of custody under the Law of Spain which the child was a resident of immediately before the Child was unlawfully removed or retention enumerated in the attached provision of the Spanish Civil Code including Article 154, See Hague Convention, Art.5 (a) (defining "rights of custody" under Article 3 to include "in particular, the right to determine the child's place of residence");

    b.     At the time of the Child's removal from Spain, Petitioner was actually exercising his rights of custody within the meaning of Articles 3 and 5 of the Convention and, but for Respondent's removal and retention of the Children, Petitioner would have continued to exercise those rights; and

    c.     The Child was habitually a resident with the Petitioner in Spain within the meaning of Article 3 of the Convention immediately before their removal and retention by Respondent.

17.     Respondent is presently wrongfully retaining the Child in the State of Florida and upon information and belief, in the County of Broward.

18.     Upon information and belief, Respondent is keeping the Child at Respondent's boyfriend's residence in the Southern District of Florida.

19.     The Child is now four (4) years old. The Hague Convention applies to children under sixteen (16) years of age and thus applies to the Child.

20.     This Petition is filed more than one year from Respondent's wrongful removal of the Child. Petitioner has never consented or acquiesced to Respondent's wrongful removal or retention of the Child.

## V. PROVISIONAL REMEDIES
### (42 U.S.C. § 11604 & HAGUE CONVENTION, ARTICLE 16)

21.     Petitioner requests that this Court issue an immediate Order restraining Respondent from removing the Child from the jurisdiction of this Court, and a warrant seeking immediate physical custody of the Child, directing any United States Marshal or other law enforcement officer to bring the Child before this Court. Petitioner also asks that this Court schedule an expedited hearing on the merits of this Petition.

## VI. ATTORNEY FEES AND COSTS
### (42 U.S.C. § 11607)

22.     To date, Petitioner has incurred attorney's fees and costs as a result of the wrongful retention of the Child by Respondent.

23.     Petitioner respectfully requests that this Court award him all costs and fees, including transportation costs, incurred to date as required by 42 U.S.C. § 11607.

## VII. NOTICE OF HEARING
## (42 U.S.C. § 11603 (c))

24.        Pursuant to 42 U.S.C. § 11603 (c), Respondent shall be given notice of

these proceedings in accordance with the laws governing notice in interstate child

custody proceedings.

## VIII. RELIEF REQUESTED

25.        **WHEREFORE**, Petitioner, Przemyslaw Michael Lotocki prays for the

following relief:

(a)        An immediate temporary restraining Order prohibiting the removal

of the Child from the jurisdiction of this Court pending a hearing on the merits of

this Verified Complaint, and further providing that no person acting in concert or

participating with Respondent shall take any action to remove the Child from the

jurisdiction of this Court pending a determination on the merits of the Verified

Complaint;

(b)        The scheduling of an expedited preliminary injunction hearing on

the merits of the Verified Complaint; an Order that Respondent show cause at this

hearing why the Child should not be returned to Spain, and why such other relief

requested in the Verified Complaint should not be granted; and, pursuant to

Federal Rule of Civil Procedure 65, and Order that the trial of the action on the

merits be advanced and consolidated with the hearing on the Verified Complaint;

(c)        A final judgment in Petitioner's favor establishing that the Child

shall be returned to Spain, where an appropriate custody determination can be

made by a Spanish court under Spanish law;

7

(d)      An Order requiring that Respondent pay Petitioner's expenses and

costs, including transportation costs, under 42 U.S.C. § 11607, such expenses and

costs to be resolved via post-judgment motion, consistent with the procedure

outlined under the Local Rule 54.2 (A) of this Court; and

(e)      For any such further relief as may be just and appropriate under the

circumstances of this case.

Respectfully submitted, this 30th day of September, 2015.

                          Respectfully submitted,

                          /S/ Michael B. Cohen

                          _____

                          Michael B. Cohen, Esq.
                          Florida Bar No: 210196
                          6400 North Andrews Ave., Ste 505
                          Fort Lauderdale, Florida 33309
                          mcohenlaw@aol.com
                          Ph (954) 928-0059
                          Fax (954) 928-0929

## **VERIFICATION**

I am one of the attorneys for Plaintiff/Petitioner, Przemyslaw Michael Lotocki. I make this verification on behalf of Petitioner because Petitioner is absent from this country. The above document is true based on the above-identified attorneys' investigation to date and communications between Michael B. Cohen, Esq. and Petitioner, except as to the matters that are stated in it on information and belief and as to those matters I believe it to be true. I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct.

This 30th day of September, 2015.

/S/ Michael B. Cohen

_____

Michael B. Cohen, Esq.

## <u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was furnished via CMECF E-Filing to all applicable parties on September 30, 2015.

Respectfully submitted,

/S/ Michael B. Cohen

_____
Michael B. Cohen, Esq.
Florida Bar No:  210196
6400 North Andrews Ave
Suite 505
Fort Lauderdale, Florida 33309
Ph (954) 928-0059
Fax (954) 928-0828
e mail: mcohenlaw@aol.com



HCCH

HAGUE CONFERENCE ON
PRIVATE INTERNATIONAL LAW
CONFÉRENCE DE LA HAYE
DE DROIT INTERNATIONAL PRIVÉ

## 28. CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION[1]

*(Concluded 25 October 1980)*

The States signatory to the present Convention,

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody,

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access,

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions –

### CHAPTER I – SCOPE OF THE CONVENTION

#### Article 1

The objects of the present Convention are –

a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

#### Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

#### Article 3

The removal or the retention of a child is to be considered wrongful where –

a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

## EXHIBIT " A "

---

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private

## Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

## Article 5

For the purposes of this Convention –

a) "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;

b) "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

### CHAPTER II – CENTRAL AUTHORITIES

## Article 6

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.

Federal States, States with more than one system of law or States having autonomous territorial organisations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has appointed more than one Central Authority, it shall designate the Central Authority to which applications may be addressed for transmission to the appropriate Central Authority within that State.

## Article 7

Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.

In particular, either directly or through any intermediary, they shall take all appropriate measures –

a) to discover the whereabouts of a child who has been wrongfully removed or retained;

b) to prevent further harm to the child or prejudice to interested parties by taking or causing to be taken provisional measures;

c) to secure the voluntary return of the child or to bring about an amicable resolution of the issues;

d) to exchange, where desirable, information relating to the social background of the child;

e) to provide information of a general character as to the law of their State in connection with the application of the Convention;

f) to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child and, in a proper case, to make arrangements for organising or securing the effective exercise of rights of access;

g) where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers;

h) to provide such administrative arrangements as may be necessary and appropriate to secure the safe return of the child;

i) to keep each other informed with respect to the operation of this Convention and, as far as possible, to eliminate any obstacles to its application.

### CHAPTER III – RETURN OF CHILDREN

## Article 8

Any person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central

a)   information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;
b)   where available, the date of birth of the child;
c)   the grounds on which the applicant's claim for return of the child is based;
d)   all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

The application may be accompanied or supplemented by –
e)   an authenticated copy of any relevant decision or agreement;
f)   a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;
g)   any other relevant document.


## Article 9

If the Central Authority which receives an application referred to in Article 8 has reason to believe that the child is in another Contracting State, it shall directly and without delay transmit the application to the Central Authority of that Contracting State and inform the requesting Central Authority, or the applicant, as the case may be.


## Article 10

The Central Authority of the State where the child is shall take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child.


## Article 11

The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.
If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. If a reply is received by the Central Authority of the requested State, that Authority shall transmit the reply to the Central Authority of the requesting State, or to the applicant, as the case may be.


## Article 12

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.
The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.
Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.


## Article 13

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –
a)   the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or

b)      there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.

In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.


## Article 14

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognised or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.


## Article 15

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.


## Article 16

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.


## Article 17

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.


## Article 18

The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time.


## Article 19

A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.

## Article 20

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

CHAPTER IV – RIGHTS OF ACCESS

## Article 21

An application to make arrangements for organising or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.

The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.

The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organising or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

CHAPTER V – GENERAL PROVISIONS

## Article 22

No security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention.

## Article 23

No legalisation or similar formality may be required in the context of this Convention.

## Article 24

Any application, communication or other document sent to the Central Authority of the requested State shall be in the original language, and shall be accompanied by a translation into the official language or one of the official languages of the requested State or, where that is not feasible, a translation into French or English.

However, a Contracting State may, by making a reservation in accordance with Article 42, object to the use of either French or English, but not both, in any application, communication or other document sent to its Central Authority.

## Article 25

Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.

Article 26

Each Central Authority shall bear its own costs in applying this Convention.

Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of the expenses incurred or to be incurred in implementing the return of the child.

However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice.

Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Article 27

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

Article 28

A Central Authority may require that the application be accompanied by a written authorisation empowering it to act on behalf of the applicant, or to designate a representative so to act.

Article 29

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

Article 30

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

Article 31

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units –

a)    any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;

b)    any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

## Article 32

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.

## Article 33

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.

## Article 34

This Convention shall take priority in matters within its scope over the *Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of the protection of minors*, as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organising access rights.

## Article 35

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.
Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.

## Article 36

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

### CHAPTER VI – FINAL CLAUSES

## Article 37

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session.
It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

## Article 38

Any other State may accede to the Convention.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.
The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

## Article 39

Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

## Article 40

If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall extend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.

## Article 41

Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.

## Article 42

Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. No other reservation shall be permitted.

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.

## Article 43

The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.

Thereafter the Convention shall enter into force –
(1)    for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;
(2)    for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.


## Article 44

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved it or acceded to it.
If there has been no denunciation, it shall be renewed tacitly every five years.
Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five year period. It may be limited to certain of the territories or territorial units to which the Convention applies.
The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.


## Article 45

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following –
(1)    the signatures and ratifications, acceptances and approvals referred to in Article 37;
(2)    the accessions referred to in Article 38;
(3)    the date on which the Convention enters into force in accordance with Article 43;
(4)    the extensions referred to in Article 39;
(5)    the declarations referred to in Articles 38 and 40;
(6)    the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;
(7)    the denunciations referred to in Article 44.


In witness whereof the undersigned, being duly authorised thereto, have signed this Convention.

Done at The Hague, on the 25th day of October, 1980, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference on Private International Law at the date of its Fourteenth Session.



**MINISTERIO
DE JUSTICIA**

**REGISTROS CIVILES
ESPAÑA**

FÓRMULA B

TOMO: 00050 PÁGINA: 027

| 1 | **ESTADO: ESPAÑA**<br>ÉTAT: | 2 | **REGISTRO CIVIL VILLAJOYOSA/VILA JOIOSA**<br>SERVICE DE L'ÉTAT CIVIL DE |

**3  CERTIFICACIÓN DEL ACTA DE  MATRIMONIO N.º ---------**
EXTRAIT DE L'ACTE DU MARIAGE N.º

| 4 | **FECHA Y LUGAR DEL MATRIMONIO**<br>DATE ET LIEU DE MARIAGE | Jo `2` `1`  Mo `0` `1`  An `2` `0` `1` `1` | VILLAJOYOSA/VILA JOIOSA ,<br>ALICANTE , ESPAÑA |
|---|---|---|---|
| | | **5  MARIDO**<br>MARI | **6  MUJER**<br>FEMME |
| 7 | **APELLIDOS ANTES DEL MATRIMONIO**<br>NOM AVANT LE MARIAGE | LOTOCKI | SILVA MOLINA |
| 8 | **NOMBRE PROPIO**<br>PRÉNOMS | PRZEMYSLAW MICHAL | YURISLAY |
| 9 | **FECHA Y LUGAR DEL NACIMIENTO**<br>DATE ET LIEU DE NAISSANCE | Jo `0` `3`  Mo `0` `6`  An `1` `9` `6` `9`<br>WARSZAWA , POLONIA | Jo `0` `9`  Mo `0` `9`  An `1` `9` `9` `0`<br>SANTIAGO DE CUBA , , CUBA |
| 10 | **APELLIDOS DESPUÉS DEL MATRIMONIO**<br>NOM APRÈS LE MARIAGE | LOTOCKI | SILVA MOLINA |

**11  OTROS DATOS DEL ACTA**
AUTRES ÉNONCIATIONS DE L'ACTE

| 12 | **FECHA DE EXPEDICIÓN,<br>FIRMA Y SELLO**<br>DATE DE DÉLIVRANCE,<br>SIGNATURE, SCEAU | Jo `2` `1`  Mo `0` `3`  An `2` `0` `1` `4` |

, OLAYA SAGARRIBAY ESTEVE

SÍMBOLOS / SYMBOLES / ZEICHEN / SYMBOLS / ΣΥΜΒΟΛΑ / SIMBOLI / SYMBOLEN / SIMBOLOS / ISARETLER / SIMBOLI

- Jo: Día / Jour / Tag / Day / Ημέρα / Giorno / Dag / Dia / Gün / Dan
- Mo: Mes / Mois / Monat / Month / Μήν / Mese / Maand / Mês / Ay / Mesec
- An: Año / Année / Jahr / Year / Έτος / Anno / Jaar / Ano / Yıl / Godina
- Sc: Separación personal / Séparation de corps / Trennung von Tisch und Bett / Legal separation / Χωρισμός από τραπέζι και κλίνη /
  Separazione personale / Scheiding van tafel en bed / Separação de pessoas e bens / Ayrılık / Fizička rastava
- Div: Divorcio / Divorce / Scheidung / Divorce / Διαζύγιο / Divorzio / Echtscheiding / Divórcio / Boşanma / Razvod
- A: Anulación / Annulation / Nichtigerklärung / Annulment / Ακύρωση / Annullamento / Nietigverklaring / Anulação / İptal / Poništenje
- Dm: Defunción del marido / Décès du mari / Tod des Ehemanns / Death of the husband / Θάνατος του συζύγου / Morte del marito /
  Overlijden van de man / Óbito do marido / Kocanın ölümü / Smrt muža
- DE: Defunción de la mujer / Décès de la femme / Tod der Ehefrau / Death of the wife / Θάνατος της συζύγου / Morte della moglie /
  Overlijden van de vrouw / Óbito da mulher / Karının ölümü / Smrt žene

# EXHIBIT " B "





MINISTERIO
DE JUSTICIA

REGISTROS CIVILES
ESPAÑA

FÓRMULA A

TOMO: 00142 PÁGINA: 265

| 1 | ESTADO: ESPAÑA<br>ÉTAT: | 2 | REGISTRO CIVIL VILLAJOYOSA/VILA JOIOSA<br>SERVICE DE L'ÉTAT CIVIL DE |
|---|---|---|---|

**3  CERTIFICACIÓN DEL ACTA DE  NACIMIENTO  N.° ---------**
EXTRAIT DE L'ACTE DE NAISSANCE N.°

| 4 | FECHA Y LUGAR DE NACIMIENTO<br>DATE ET LIEU DE NAISSANCE | Jo  Mo  An<br>2 2  0 1  2 0 1 1 | VILLAJOYOSA/VILA JOIOSA ,<br>ALICANTE , ESPAÑA |
|---|---|---|---|

| 5 | APELLIDOS   S . L . |
|---|---|

| 6 | NOMBRE PROPIO   C . N |
|---|---|

| 7 | SEXO  M<br>SEXE | 8 | PADRE<br>PÈRE | 9 | MADRE<br>MÈRE |
|---|---|---|---|---|---|
| 5 | APELLIDOS<br>NOM | | LOTOCKI | | SILVA MOLINA |
| 6 | NOMBRE PROPIO<br>PRÉNOMS | | PRZEMYSLAW MICHAL | | YURISLAY |

| 10 | OTROS DATOS DEL ACTA<br>AUTRES ÉNONCIATIONS DE L'ACTE |
|---|---|

| 11 | FECHA DE EXPEDICIÓN,<br>FIRMA Y SELLO<br>DATE DE DÉLIVRANCE,<br>SIGNATURE, SCEAU<br><br>OLAYA SAGARRIBAY<br>ESTEVE | Jo  Mo  An<br>2 1  0 3  2 0 1 4 |
|---|---|---|

SÍMBOLOS / SYMBOLES / ZEICHEN / SYMBOLS / SYMBOЛA / SIMBOLI / SYMBOLEN / SÍMBOLOS / ISARETLER / SIMBOLI

— Jo: Día / Jour / Tag / Day / Ημέρα / Giorno / Dag / Día / Gün / Dan
— Mo: Mes / Mois / Monat / Month / Μήνας / Mese / Maand / Mês / Ay / Mesec
— An: Año / Année / Jahr / Year / Έτος / Anno / Jaar / Ano / Yıl / Godina
— M: Masculino / Masculin / Männlich / Male / Άρρεν / Maschile / Mannelijk / Masculino / Erkek / Muški
— F: Femenino / Féminin / Weiblich / Female / Θήλυ / Femminile / Vrouwelijk / Femenino / Kadın / Ženski
— Mar: Matrimonio / Mariage / Eheschließung / Marriage / Γάμος / Matrimonio / Huwelijk / Casamento / Evlenme / Zaključenje braka
— Sc: Separación personal / Séparation de corps / Trennung von Tisch und Bett / Legal separation / Χωρισμός από τραπέζης και κοίτης / Separazione personale / Scheiding van tafel en bed / Separação de pessoas e bens / Ayrılık / Fizička rastava
— Div: Divorcio / Divorce / Scheidung / Divorce / Διαζύγιο / Divorzio / Echtscheiding / Divórcio / Bosanma / Razvod
— A: Anulación / Annulation / Nichtigerklärung / Annulment / Ακύρωση / Annullamento / Nietigverklaring / Anulação / İptal / Poništenje
— D: Defunción / Décès / Tod / Death / Θάνατος / Morte / Overlijden / Óbito / Ölüm / Smrt
— Dm: Defunción del marido / Décès du mari / Tod des Ehemanns / Death of the husband / Θάνατος του συζύγου / Morte del marito / Overlijden van de man / Óbito do marido / Kocanın ölümü / Smrt muža
— Df: Defunción de la mujer / Décès de la femme / Tod der Ehefrau / Death of the wife / Θάνατος της συζύγου / Morte della moglie / Overlijden van de vrouw / Óbito do mulher / Karının ölümü / Smrt žene


EXHIBIT " C "



**MINISTERIO**
**DE JUSTICIA**

SECRETARIA DE ESTADO DE JUSTICIA

DIRECCIÓN GENERAL DE COOPERACIÓN JURÍDICA INTERNACIONAL Y RELACIONES CON LAS CONFESIONES

SUBDIRECCIÓN GENERAL DE COOPERACIÓN JURÍDICA INTERNACIONAL

Madrid 30/04/14

4C 2

MINISTERIO DE JUSTICIA
REGISTRO GENERAL S.B. 45

5 MAY 2014

**S A L I D A**

**OFFICE OF CHILDREN'S ISSUES (CA/OCS/CI) U.S.**
**Department of State.**
**2201 C Street, N.W.  SA-29, 4th Floor**
**WASHINGTON, DC 20520-2818**
**United States of America**

**CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION, DONE AT THE HAGUE, ON THE 25/10/80**
**CASE:** LOTOCKI, Przemyslaw Michal // SILVA MOLINA, Yurislay
**Our Ref.:** H28 (3261)

Please find enclosed a return application on behalf of Mr. Przemyslaw Michal LOTOCKI, under article 12 of Hague Convention respect of her minor child, **Christian LOTOCKI SILVA**, who has been wrongfully retained, in terms of Article 3 of Hague Convention, in the United States by her mother, Mrs. Yurislay SILVA MOLINA.

The father does not know the current address of the mother and the child. However he believes they possibly are residing in the State of Florida and their previous domicile was:

**3791 NW 110ᵀᴴ AVE, CORAL SPRINGS, FLORIDA 33065, (U.S)**

In 2011 the parents of Christian married in Villajoyosa, Alicante (Spain), place where the common child was born on 22/01/2011, establishing the family there their habitual residence ever since.

According the applicant's statement, in May 2012 the wife travelled with the minor to Canada for tourist visit. Once there, his wife decided to move in with her family in Miami, U.S.

The applicant argues that during more than a year she deceived him about her real intention that was to establish the minor's residence in U.S. and so, no returning the minor to the family home in Villajoyosa, Alicante, Spain.

By doing that, the mother has violated the father's custody rights respect to his son. Then, on 28 March 2014, the father has reported the facts of the child's illicit retention to the police in Gandía, Valencia. Spain. (Document attached).

The retention is wrongful pursuant **articles 3 and 5 of Hague Convention**, as the father has never authorized to the mother to establish the minor residence in U.S.

Both parents share the parental responsibility and they were exercising jointly the minors' custody rights.

According the **article 3** of Hague Convention, the removal or the retention of a child is to be considered wrongful where,

**EXHIBIT "D"**

SAN BERNARDO 62, 2ª
28015 MADRID
TEL: 91 308 44 37



**MINISTERIO**
**DE JUSTICIA**

SECRETARIA DE ESTADO DE JUSTICIA

DIRECCIÓN GENERAL DE COOPERACIÓN JURÍDICA
INTERNACIONAL Y RELACIONES CON LAS CONFESIONES

SUBDIRECCIÓN GENERAL DE COOPERACIÓN JURÍDICA
INTERNACIONAL

a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

According to the Spanish Civil Code (article 154 and ss.), which we enclose, Parental authority is shared by both parents, and both parents therefore share the ability to decide and resolve all matters that affect a minor.

In the event of disagreement between the parents over decisions that can or should be taken concerning an underage child, these relating for example to schooling and educational matters such as choosing a school or extracurricular activities, health care when choosing a doctor, personal training when choosing the denomination or religious training, or choosing the place or country where the minors live, etc., and when common agreement has proved impossible, either of the parents can have recourse to the Court to resolve the conflict.

After hearing both parents and the child if old enough, then without further recourse the judge attributes the power of deciding to the father or mother, and if the disagreements are repeated or some other cause arises that seriously impedes the exercise of parental authority, the judge may assign totally or partially to one of the parents the ability to decide, including sharing their functions between them. All these measures can be adopted for a maximum period of two years.

The respondent mother is not entitled to change the address of their common child without the applicant's consent, according the Spanish law.

Please acknowledge receipt of the application and keep us informed of further developments. We appreciate very much your cooperation in this matter.

Yours sincerely,

THE CENTRAL AUTHORITY

Carmen García Revuelta
Legal Adviser

SAN BERNARDO 62, 2ª
28015 MADRID
TEL: 91 390 44 37

## SOLICITUD DE DEVOLUCION
### REQUEST FOR RETURN
### REQUETE EN VUE DU RETOUR

AUTORIDAD CENTRAL REQUIRENTE
O SOLICITANTE
AUTORITE CENTRALE REQUERANTE
REQUESTING CENTRAL AUTHORITY
OR APPLICANT

...............................................

_____

AUTORIDAD CENTRAL REQUERIDA

AUTORITE REQUISE
REQUESTED AUTHORITY

...............................................

_____

0 3  ABR 2014

**SOLICITUD (Naturaleza y artículos relevantes del Convenio):**
**DEMANDE** (Objet et article pertinent de la Convention):
**REQUEST** (Nature and relevant article of the Convention):

.................................................................................

.................................................................................

.................................................................................

.................................................................................

.................................................................................

**referente al menor.**
concerne l'enfant.
concerns the following child.

1º)....... C . S . L

2º)...............................................................................

3º)...............................................................................

4º)...............................................................................

**cumplirá la edad de 16 años el:**
qui aura 16 ans le:
who will attain the age of 16 on:

1º) 22/ 20 27.    2º) ............. 20......;
3º) ........ 20........   4º) ............. 20.......

**NOTA: Los apartados siguientes deben ser rellenados de la manera más completa posible.**
NOTE: Les rubriques suivantes doivent être remplies de la façon la plus complète possible.
NOTE: The following particulars should be given as far as possible.

1

A. INFORMACION GENERAL./INFORMATIONS GENERALES./GENERAL INFORMATION.

I.- Datos personales del menor/es y de sus padres.
Identité de l'enfant et des parents.
Identity of the child and parents.

1.: Menor. Enfant. Child:

**Nombre**
Prénom
First names:

1°) S. [illegible] 2°) .......................................
3°)......................4°)......................................

**Apellidos**
Nom
Name:

1°) S. L. ..............................)......
2°) .........................................
3°) .........................................
4°) .........................................

Fecha y lugar de nacimiento:  1°) 22 / 01 / 2011   VILLAJOYOSA , SPAIN
Date et lieu de naissance:    2°) ..................................
Date and place of birth:  3°) ...............................
                          4°) .................................

Nacionalidad:        1°) POLISH / POLACA  2°) .....................
Nationalité:         3°) ................  4°) ...................
Nationality or nationalities:

**Sexo/Sexe/Sex:**
1°) ...M...  2°) .........  3°) .........  4°) .........

**Residencia habitual:**
Résidence habituelle (ou résidence avant un déplacement sans droit ou non retour).
Habitual residence (or habitual residence before any improper removal or retention):
1°) C/ L'ALBER 65 1°-1A
   SUECA, SPAIN  2°) ...........................................
3°) ................................  4°) ...........................................

2

**Pasaporte o documento de identidad n°./**
Passeport ou carte d'identité (numéro s'il y a lieu)
Passport or identity card:   PASSPORT : ED 4709805

1°) Y-1949292-X   2°) ✗

3°) ................................   4°) ................................

**Señas personales y fotografía (Véanse anexos)**
Signalement et éventuellement photo (voir annexes)
Description and photo, if possible (see annexes):

1°) WHITE CAUCASIAN   DARK BLOND
2 FT 6 IN   PHOTOS INCLUDED

2°) ................................

3°) ................................

4°) ................................

**PADRES/PARENTS/PARENTS.**

**2.1. Madre/Mère/Mother:**

**Nombre:**
Prénom:
First Names:   YURISLAY

**Apellidos**
Nom:
Name:   SILVA MOLINA

**Fecha y lugar de nacimiento:**
Date et lieu de naissance:
Date and place of birth:   09 | 09 | 1990   SANTIAGO DE CUBA , CUBA

**Nacionalidad o nacionalidades:**
Nationalité ou nationalités:
Nationality or nationalities:   CUBAN

**Profesión**
Profession
Occupation:   ................................

3

**Residencia habitual:**
Résidence habituelle:
Habitual residence:   FLORIDA ?

**Pasaporte o Documento de Identidad n°.**
Passeport ou carte d'identité n°. (s'il y a lieu):
Passport or identity card numer (if any):

DL. 5415-960-90-829-0
X - 8225398 - T

2.2. **Padre/Père/Father:**

**Nombre:**
Prenom:
First Names:   PRZEMYSLAW MICHAL

**Apellidos:**
Nom:
Name:   LOTOCKI

**Fecha y lugar de nacimiento:**
Date et lieu de naissance:
Date and place of birth:   03/06/1969   WARSAW, POLAND

**Nacionalidad o nacionalidades:**
Nationalité ou nationalités:
Nationality or nationalities:   POLISH

**Profesión:**
Profession:
Occupation:   CHEF / COOK

**Residencia habitual:**
Résidence habituelle:
Habitual residence:   AV. DEL MAR 3 1°-2ª
46701 GANDIA, SPAIN

**Pasaporte o Documento de Identidad n°.:**
Passeport ou carte d'identité n°. (s'il y a lieu):
Passport or identity card numer (if any):

X-9090394-N
PASSPORT: EC 2256414

4

**2.3. Fecha y lugar de celebración del matrimonio:**
Date et lieu de la célébration du mariage:
Date and place of marriage:

21/01/2011   VILLAJOYOSA, SPAIN

**2.3. Fecha y lugar de la sentencia de divorcio si la hubiere:**
Date et lieu du jugement du divorce:
Date and place of any divorce decision:   N/A

## II.- DATOS PERSONALES DEL INDIVIDUO O INSTITUCION DEL SOLICITANTE/PARTIE REQUÉRANTE: PERSONNE OU INSTITUCION/REQUESTING INDIVIDUAL OR INSTITUTION.

**Nombre:**
Prénom:
First Name:   PRZEMYSLAW MICHAL

**Apellidos:**
Nom:
Name:   LOTOCKI

**Nacionalidad (si es persona física):**
Nationalité (si personne physique):
Nationality of individual applicant:   POLISH

**Profesión (del individuo):**
Profession (si personne physique):
Occupation of individual applicant:   CHEF / COOK

**Dirección:**
Adresse:
Address:   AV. DEL MAR, 3  1º- 2ª
46701 GANDIA , VALENCIA
SPAIN

**Pasaporte o Documento de Identidad nº.:**
Passeport ou carte d'identité nº (s'il y a lieu):
Passport or identity card nº (if any):   EC 2256414

**Relación con el menor:**
Lien avec l'enfant:
Relation to the child:   FATHER

5

**Nombre y dirección del Abogado o Asesor Jurídico, si lo hubiera:**
Nom et adresse du conseiller juridique (s'il y a lieu):
Name and address of legal adviser (if any):

N/A

**III. BASES DE HECHO O LEGALES QUE JUSTIFICAN LA SOLICITUD (POR EJEMPLO LA RESOLUCION DE UN TRIBUNAL):**
**MOTIFS DE FAIT OU LEGAUX JUSTIFIANT LA REQUETE (PAR EXEMPLE DECISION D'UN TRIBUNAL):**
**FACTUAL OR LEGAL GROUNDS JUSTIFYING THE REQUEST (EG A COURT DECISION):**

**IV. Procedimientos civiles en curso o que serán iniciados:**
Procédures civiles en cours ou qui seront entreprises:
Civil proceedings in progress or intended:

POLICE REPORT / COMPLAINT FILED

**B. INFORMACION ADICIONAL EN SUPUESTOS DE SOLICITUDES PARA EL RESTABLECIMIENTO DE LA CUSTODIA:**
**INFORMATIONS ADDITIONNELLES POUR LE RÉTABLISSEMENT DE LA GARDE:**
**ADDITIONAL INFORMATION IN CASES OF APPLICATIONS FOR RESTORATION OF CUSTODY:**

**V. Lugar donde se supone que se encuentra el menor:**
Endroit où l'enfant devrait se trouver:
Place where the child is thought to be:

UNKNOWN / POSSIBLY IN A STATE OF FLORIDA
PREVIOUS ADDRESS : 3791 NW 110TH AVE
CORAL SPRINGS, FL 33065

5.1) Datos de la persona que supuestamente haya sustraído o retenido ilícitamente al menor o a

6

**a los menores:**
Renseignements concernant la personne dont il est allégué qu'elle a déplacé sans droit ou    retenu
l'enfant:
Information concerning the person alleged to have improperly removed or retained the child:

**Nombre:**
Prénom:
Firts names:   YURISLAY

**Apellidos:**
Nom:
Name:   SILVA MOLINA

**Fecha y lugar de nacimiento:**
Date et lieu de naissance, s'ils sont connus:
Date and place of birth, if known:   09/09/1990   SANTIAGO DE CUBA,
                                                                    CUBA

**Nacionalidad:**
Nationalité si elle est connue:
Nationality, if known:   CUBAN

**Profesión:**
Profession:
Occupation:   DON'T KNOW

**Relación con el menor:**
Lien ave l'enfant:
Relation to the child:   MOTHER

**Ultimo domicilio conocido:**
Dernière résidence connue:
Last known address:
3791 NW 110 TH AVE
CORAL SPRINGS, FL 33065

7

**Pasaporte o Documento de identidad n°:**
Passeport ou carte d'identité n°. (s'il y a lieu):
Passport or identity card number (if any):

X- 8225398-T

DL. 5415-960-90-829-0

**Señas personales y fotografía (véanse anexos):**
Signalement et éventuellement photo (voir annexes):
Description and photo, if possible (see annexes):

HISPANIC, LIGHT COMPLEXION,
~ 5 FT. TALL , PHOTOS INCLUDED

**5.2) Dirección del menor o de los menores:**
Adresse de l'enfant:
Adress of the child:

UNKNOWN

**5.3) Otras personas que pudieran proporcionar información complementaria en relación con el paradero del menor o de los menores:**
Autres personnes susceptibles de fournir des informations complémentaires permettant de localiser l'enfant:
Other persons who might be able to supply additional information relating to the whereabouts   of the child:

KARINA HERNANDEZ  ( AUNT )
3791 NW 110 TH AVE
CORAL SPRINGS , FL 33065

8

**VI. Lugar, fecha y circunstancias en que tuvo lugar la sustracción o retención indebida**
Lieu, date et circonstances du déplacement ou du non-retour sans droit:
Place, date and circumstances of the improper removal or retention:

EL DÍA 26 DE MAYO DE 2012 MI ESPOSA HA VOLADO CON
MI HIJO A CANADÁ DE VISITA CUANDO ENTRÓ A ESTADOS
UNIDOS PARA QUEDARSE ALLÍ. DURANTE MAS DE UN AÑO
ME HACIA CREER QUE LO HACIA POR NOSOTROS CUANDO
ME ENTERÉ QUE TODO HA SIDO UN ENGAÑO Y ME
ENCONTRE PERMANENTEMENTE SEPARADO DE MI FAMILIA
Y DE MI UNICO HIJO. / ON MAY 26TH 2012 MY WIFE
FLIED WITH MY SON TO VISIT HER FRIENDS IN CANADA
WHEN SHE ENTERED THE UNITED STATES TO STAY
THERE. DURING MORE THAN A YEAR SHE MADE ME
BELIEVE SHE WAS DOING IT FOR US WHEN I FOUND OUT
I WAS BEING DECIEVED AND PERMANENTLY SEPARATED
FROM MY FAMILY AND FROM
MY ONLY SON,

**VII. El menor debe ser devuelto a:**
L'enfant doit être remis à:
Child is to be returned to:

**a) Nombre:**
Prenom:
Firts names:

PRZEMYSLAW MICHAL

**Apellidos:**
Nom:
Name:

LOTOCKI

**Fecha y lugar de nacimiento:**
Date et lieu de naissance:
Date and place of birth:

JUNE 3 1969   WARSAW, POLAND

**Dirección:**
Adresse:
Address:

AV. DEL MAR 3 1°-2ª
46701 GANDIA, SPAIN
(VALENCIA)

.............................................................................

**Número de Teléfono:** (+34)
Téléphone:
Telephone number: 654 285 266

.............................................................................

**b) Propuesta en cuanto a las condiciones en que deberá llevarse a cabo la devolución del menor:**
Arrangements proposés pour le retour de l'enfant:
Proposed arrangements for the return of the child:

.............................................................................

I AM WILLING TO COOPERATE WITH U.S.
DEPARTMENT OF JUSTICE AND ALL THE
COMPETENT AUTHORITIES TO ARRANGE
FOR MY SON'S RETURN IN ANY WAY
POSSIBLE.

.............................................................................

## C. OTRAS CUESTIONES. AUTRES QUESTIONS. OTHER QUESTIONS.

**VIII. Otras observaciones:**
Autres observations:
Other remarks:

.............................................................................

.............................................................................

.............................................................................

.............................................................................

**IX. Relación de los documentos que se acompañan** (1).
Liste des pièces produites (1'')
List of documents attached (1''')

.............................................................................

.............................................................................

.............................................................................

.............................................................................

.............................................................................

Fecha/Date/Date. 27.03.2014
Lugar/Fait à/Place ...GANDIA...VALENCIA

Firma y/o sello de la Autoridad Central Requirente o del solicitante.
Signature et/ou cachet de l'Autorité Centrale requérante ou du requérant.
Signature and/or stamp of the requesting Central Authority or applicant.



D./Dª...PRZEMYSLAW MICHAL LOTOCKI...con

profesión CHEF y domiciliada en: AV. DEL MAR 3
1º-2ª GANDIA VALENCIA 46701

**A U T O R I Z A ,** según lo exigido en el artículo 28 del Convenio sobre los Aspectos

Civiles de la Sustracción Internacional de Menores y artículo 13 párrafo 1 (a) del

Convenio Europeo de Reconocimiento y Ejecución de decisiones en Materia de

Custodia de Menores y Restablecimiento de dicha Custodia, a la AUTORIDAD

CENTRAL DEL ESTADO ESPAÑOL o a la persona designada por esta

Autoridad Central para actuar en mi nombre.

GANDIA 27 DE MARZO DE 2014

Lugar,        Día,        mes        año.

FIRMADO: ....

(EN MAYUSCULAS Y CON LETRAS CLARAS, NOMBRE Y APELLIDOS DEL
SOLICITANTE).

Mr./Mrs.: MR. PRZEMYSLAW MICHAL LOTOCKI

of profession CHEF and residence in AV. DEL MAR 3 1°- 2ª
46701 GANDIA, VALENCIA – SPAIN

EMPOWERS, in accordance with the requirements set out in Article 28 of the Convention on the Civil Aspects of International Child's Abduction and in Article 13 paragraph 1 (a) of the European Convention on the Recognition and Enforcement of decisions in the matter of Custody of Minors and on the Restoration of that Custody, the STATE CENTRAL AUTHORITY ..................... or the Person appointed by this Central Authority to act on my behalf.

Place, GANDIA/ Date, 27   Month, 03   Year: 2014
SPAIN

Signed: ...........................

12

Przemyslaw Michal Lotocki                                    Gandía, 27 de marzo de 2014
Avenida del Mar 3, 1° - 2ª
46701 Gandía, Valencia
Tel. +34 654 285 266
m_lotocki@yahoo.com


                                    Ministerio de Justicia
                                    Servicios de Convenio
                                    Autoridad Central Española
                                    Plaza de Jacinto Benavente, 1
                                    28071 Madrid, España
                                    Tel. +34 91 390 44 37
                                    sustraccionmenores@mjusticia.es


        Estimados Señores,

        Me dirijo a ustedes como a una entidad prestigiosa y competente a la vez de ser
mi última esperanza para suplicar su asistencia y su amparo, representándome ante El
Departamento de Justicia de Los Estados Unidos en el caso de la reclamación de mis
violados derechos paternales y por el bienestar de mi hijo ꞌ C. S. L ꞌ
nacido el día 22 de enero de 2011 en Villajoyosa, Alicante que por el engaño y contra
mi voluntad ha sido permanentemente alejado de mi por su madre y mi esposa Yurislay
Silva Molina nacida el día 9 de septiembre de 1990 en Santiago de Cuba en Cuba. Por
su capricho me ha robado mi niño, mi felicidad y toda mi vida que jamás volverá de
ser igual. Sin tener ningún contacto con C S L  últimos meses y preocupándome
muchísimo por este comportamiento ignorante y perjudicial de su madre, solícito la
inmediata restitución de mi hijo bajo mi custodia para seguir ejerciendo todas mis
obligaciones que me corresponden por ser su padre y poder asegurarme de su
adecuado desarrollo físico y mental en el futuro.

        Desde que la conocí, mi esposa era lo mas importante para mi y durante su
embarazo y después de nacer nuestro hijo seguí dedicado por completo para dar a mi
familia de todo lo que necesitaba. Pero parece que mi esposa no estaba conforme
porque por alguna razón durante su viaje a Canadá decidió cambiar todo. Con mi hijo
de tan sólo un año y medio decidió cruzar la frontera de Los Estados Unidos e
instalarse con su familia en Miami. Durante más de un año me mentía que lo hacía por
todos nosotros y por nuestra familia para que un día todos podamos vivir en América
hasta cuando hace seis meses me enteré que ya no vivía con su familia y que hace
meses estaba en una relación con otra persona. Todo el tiempo insistió en evitar mis
llamadas y cuando por fin la confronté sobre sus decisiones ilógicas no dejó de mentir

y tardó un mes mas antes de admitir todos sus hechos. Me ha dicho que separarnos sería lo mejor para nosotros y que me mandaría las fotos y que me mantendría al tanto de mi hijo C.S.L. Mi mundo entero se derrumbó y durante los próximos meses hice todo lo posible para luchar por ella y para recuperar a mi familia. Desgraciadamente con su recién encontrada falta de respeto hacia mi y con todo el desprecio que de repente sufrí de su parte no he podido cambiar nada. Expuesto a su subsecuente silencio y su indiferencia no tenía otro remedio sino buscar el auxilio por fuera consultando a todo el mundo al respecto. Por eso pasé unos meses en Polonia porque según El Consulado Polaco en Washington con cual hablé primero y luego según El Ministerio de Justicia en Polonia en Varsovia podía reclamar a mi hijo a base de su nacionalidad Polaca. Lo que pasó que al final todo nuestro tiempo y todo mi esfuerzo resultó injustificado cuando las preguntas de la parte americana sembraron dudas sobre sus convencimientos anteriores.

Ahora estoy de vuelta en España y pido que se haga la justicia porque no se cuanto tiempo más podré vivir en separación de mi único hijo sin poder a darle mi apoyo y a guiar a su madre que en muchas ocasiones parecía carecer la lógica y la capacidad para educar y criar a su propio niño. La última vez que hemos hablado usé todos los argumentos para que vuelva a inscribir a C.S.L. en una guardería que todo el tiempo que permaneció en las manos de la gente extraña ha sido lo suficiente para desarrollar patrones de comportamiento alarmante en mi hijo para consecuentemente padecer de los problemas de salud crónicas. Esto sería inapropiado permitirle que continuara creciendo en este entorno improvisado careciendo de la estabilidad tan necesaria para todos los niños. Además que hablando inglés y castellano C.S.L. no tardará nada en adaptarse a vivir de nuevo en España que por su clima sólo le puede ayudar sobrepasar sus persistentes problemas respiratorios. Yo le necesito a mi hijo y mi hijo me necesita a mi y no puede ser que las decisiones egoístas de una persona inestable y privada de todos los valores morales siguen causando más daño y que se quedarán exentas de cualquiera intervención legal.

Lucho por el bienestar y un futuro estable de un niño inocente que como en mi caso ha sido victima de las circunstancias viles, pero quien al final tendrá que asumir todas las consecuencias de los inconscientes aunque deliberados hechos de su madre. Nunca esperaría que alguien sería capaz de una atrocidad semejante. ¿De que ejemplo servirá a su hijo y que aprenderá él a lo largo de su vida expuesto a un comportamiento tan perverso y devastador?

Sinceramente,

Przemyslaw Michal Lotocki

Przemyslaw Michal Lotocki                                    Gandía, March 27, 2014
Avenida del Mar 3, 1º - 2ª
46701 Gandía, Valencia
Tel. +34 654 285 266
m_lotocki@yahoo.com


                              Ministry of Justice
                              Convention Services
                              Spanish Central Authority
                              Plaza de Jacinto Benavente, 1
                              28071 Madrid, Spain
                              Tel. +34 91 390 44 37
                              sustraccionmenores@mjusticia.es


        Esteemed Sirs,

        I write to you as to one prestigious and competent entity and at the same time
my last hope to plead your assistance and support in representing me before the United
States Department of Justice in the claim of my violated paternal rights and for the
well being of my son   C . S . L        ι born on January 22 of 2011 in Villajoyosa,
Spain who by deception and against my will had been permanently separated from me
by his mother and my wife Yurislay Silva Molina born on September 9 of 1990 in
Santiago de Cuba in Cuba. Just because of her whim I was robbed of my son, my
happiness and my whole life which will never be the same again. Without having any
contact with  C·S·L in the last months and worrying immensely for an ignorant and
damaging behaviour of my wife I solicit for my son's immediate restitution under my
custody to continue carrying out all of my obligations that pertain to me as his father
and to be able to ensure my son's appropriate physical and mental development in the
future.

        Ever since I have met her, my wife became someone most important to me and
during her pregnancy and after our san was born I stayed completely involved to give
my family everything it needed. But it seems that my wife was not sold on this idea
because during her tourist visit to Canada she decided to change everything. With my
son of only one year and a half she decided to cross the border of The United States
and to move in with her family in Miami. For more than a year she lied to me saying
she was doing this for us and for our family so that one day we all could live together
in America until some six months ago when I found out she had moved out from her
family and that she has been in a relationship with somebody for some time then. She
kept avoiding my phonecalls and when I finally was able to confront her about her

insane decissions it took her another month to admit all her actions. She said that going our separate ways will be the best thing to do and that she will send me some photos and will keep me up to date when it comes to my son C S L My whole world had crushed in that very moment and during the next two monts I did all I possibly could to fight for her and to get my family back. Unfortunately with her new-found lack of respect towards me and all the disdain I suddenly had to suffer from her I just couldn't change anything. Exposed to her subsequent silence and her indifference I had no other choice but to look for some outside help consulting everybody I could. That is why I had spent few months in Poland because according to The Polish Consulate in Washington to whom I had spoken at first and then The Polish Ministry of Justice in Warsaw I could demand my son's return based on his Polish citizenship. As it turned out all of our time and all my efforts resulted to be unjustified when the questions from the american side casted doubt on their previous convictions.

Now I am back in Spain and I am asking for justice to prevail because I simply do not know how much longer I will be able to live in this separation from my only son without being able to give him my support and without being able to guide his mother who on many occasions lacked the logic and the capacity to educate and to raise her own child. The last time we spoke I used every argument for her to send C S L back to the kindergarten for the time he had spent in the hands of the strangers was long enough for him to develop disturbing behavioral patterns and to consequently suffer from chronic health problems. It would be improper to let him continue growing in this improvised environment and lacking the stability so necessary for every child. Moreover C S L ability to speak English and Spanish will allow him to adapt himself immediately to living in Spain which climate will only help surpass his persistent respiratory problems. I need my son and my son needs me and it cannot be that the selfish decissions of one unstable and stripped of all moral values person continue causing any more harm and remain exempt of any legal intervention.

I fight for a well being and the safe future of an innocent child who just like me found himself a victim of these vile circumstances, but who at the end will have to asume all of the consequences caused by the unconscious yet deliberate acts of his mother. I did not think anybody would be capable of such atrocity. What example will she provide to          and what will he learn during his live exposed to her so perverse and devastating conduct.

Sincerely Yours,

Przemyslaw Michal Lotocki

CODIGO CIVIL ESPAÑOL
**SPANISH CIVIL CODE**

Artículo 160:

Los progenitores, aunque no ejerzan la patria potestad, tienen el derecho de relacionarse con sus hijos menores, excepto con los adoptados por otro o conforme a lo dispuesto en resolución judicial.

No podrán impedirse sin justa causa las relaciones personales del hijo con sus abuelos y otros parientes y allegados.

En caso de oposición, el juez, a petición del menor, abuelos, parientes o allegados, resolverá atendidas las circunstancias. Especialmente deberá asegurar que las medidas que se puedan fijar para favorecer las relaciones entre abuelos y nietos, no faculten la infracción de las resoluciones judiciales que restrinjan o suspendan las relaciones de los menores con alguno de sus progenitores.

**Article 160:**

**Parents, even those who do not exert parental authority, will have the right to keep in touch with their under age children, except with children adopted by another person or according to a judicial decision.**

**Personal relationship between child and other relatives and family members could not be prevented but on just grounds.**

**In the case of defiance, the Judge, on the child or relative or family member's request, will decide all circumstances being met. It must be specially ensured that the measures that can be adopted to facilitate the relationship between children and their grand parents, do not enable the infringement of judicial decisions restraining or suspending the relations of the children with one of their parents.**

EXHIBIT " E "